J. L. LIVINGSTON, et al. v. UNITED STATES FIRE INSURANCE COMPANY, et al.

Middle Section February 1, 1928.

J. T. Baskerville, of Gallatin, Frank M. Drake, of Louisville, Ky., and W. D. Gilliam, of Scottsville, Ky., for appellants.

Bass, Berry & Sims, of Nashville, for appellees.

FAW, P. J.   Under the above style, eight suits, separately brought but consolidated and tried together in the chancery court of Trousdale county, have been appealed to this court by the respective defendants.

The complainants are J. L. Livingston, a resident of the town of Hartsville, in Trousdale county, Tennessee, and his brother, Allen Livingston, a resident of the town of Scottsville, in Allen county, Kentucky.

During the period of time covering the transactions involved in these suits, and for some years theretofore, the two complainants were partners, and as such were engaged in business at Scottsville, Kentucky, under the trade name of Scottsville Builders Supply Company.

On March 15, 1925, the greater part of the buildings and stock of lumber and other builders supplies, comprising the "plant" of the complainants at Scottsville, was destroyed by fire.

The defendants (six insurance companies) had issued fire insurance policies on the aforesaid buildings and stock of complainants,

which policies were in force at the time the property burned. There were eight of these policies (one of the six defendants having issued three policies) and they aggregated $10,000.

The total amount of fire insurance in force on the property at the time it burned was $28,000—$18,000 of this amount having been written by insurance companies other than the defendants.

The complainant's bills were filed on July 24, 1925, and an answer to each bill was filed on December 23, 1925. The subject-matter of each of the bills is the same, except the name of the defendant and the date and amount of the policies. Each bill contains all the allegations essential to the statement of a right of action in the complainants and against the defendant on the policy therein described, and for a statutory penalty of twenty-five per cent because of the failure of the defendant to pay the amount of the policy on demand made after the expiration of sixty days from the filing of proofs of loss, with an appropriate prayer for the amount of the policy, and for interest and penalty. The policy sued on in each bill was filed as an exhibit thereto.

In each answer of the respective defendants, the same admissions and denials are made, and the same defenses pleaded. The defendants admit the issuance of the policies, the payment of the premiums thereon, loss and damage by fire on the property covered by the policies, but they demand strict proof as to the extent of such loss and damage. Defendants further admit that notice of loss and damage was forwarded to them by complainants in due time, that sworn proofs of loss were seasonably made and delivered to them, and that they had declined to pay the amount of said policies or any part of same. They also deny that their refusal to pay was in bad faith.

The defendants allege that the fire which destroyed the property of complainants described in the bills was caused or brought about by the intentional, wilful, deliberate or fraudulent act or acts of the complainants, or one of them, for the purpose of destroying the property and causing the loss sued for; and upon that ground the defendants deny liability to complainants in any sum.

In each of said answers, the defendant quotes and relies upon a provision of the policy as follows:

"This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance, or the subject thereof; or if the interest of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relative to his insurance, or the subject thereof; whether before or after a loss."

The defendants aver in their answers that complainants, in sworn proofs of loss as to each policy, stated, in writing, under oath, that

the value of the insured buildings was $7,159.30, and that the loss on the buildings covered by insurance amounted to $5,759.30, whereas, in fact, and as complainant knew at the time, the value of said buildings and the loss thereon did not exceed $2,000; that complainants stated in said proofs of loss that the value of the stock on hand at the time of the fire was more than $39,000, and that the loss thereon was more than $34,000, when, as a matter of fact, and as they well knew at the time, the value of said stock did not exceed $8,000, and the loss thereon did not exceed the sum of $3,000. Defendants averred that these misrepresentations were deliberately and fraudulently made, for the purpose of misleading the defendants in an effort to have them rely upon same and make payment of a larger claim than the true amount of the liability of the said defendants; that these misrepresentations and false statements were material and made for the purpose of practicing fraud upon the defendants, and that they would have been defrauded to their detriment in a large sum if they had relied upon said statements in the proofs of loss.

In their answers the defendants also quote and rely upon another provision of each policy, as follows:

"This company shall not be liable under this policy for a greater proportion of any loss on the described property than the amount hereby insured shall bear to the whole insurance whether valid or not, by solvent or insolvent insurers, covering such property."

It is then averred that, at the time of the fire and loss, complainants had in force and effect fire insurance covering the property alleged to have been destroyed and damaged in an aggregate amount of $28,000; that, as before stated, the value of the property burned was much less than $28,000, and defendants say that if there should be liability under the policies for any loss or damage by reason of said fire, the same should be apportioned to all the insurance on the property covered by the policies sued on. Each of the defendants denies that in any event it is liable for more than its proportionate part of the loss and damage as aforesaid.

The defendants say in their answers that they were acting in good faith in declining to pay complainants' claim; and that complainants are not entitled to the twenty-five per cent penalty, or any part thereof, for the further reason that the contracts sued on were, each and all of them, made, delivered and to be performed in the State of Kentucky, and that in that State there is no law authorizing the collection of any such penalty as claimed by complainants.

Other defenses were tendered by the answers, but they were waived and abandoned before or at the final hearing below. The complainants also waived and abandoned their suit for the penalty of twenty-five per cent provided by the statutes of Tennessee.

Upon the issues thus made as above stated, the consolidated causes went to proof, and a large number of depositions of witnesses were taken and filed on behalf of the parties, respectively, upon which, together with the pleadings and numerous exhibits to pleadings and depositions, the Chancellor pronounced, and caused to be entered of record, a final decree, as follows:

"Be it remembered, that the foregoing styled causes were by consent of the parties, heard by and before Chancellor W. R. Officer, presiding in Chambers at Livingston, Tennessee, when by consent of all the parties hereto by their solicitors of record, said above eight separate causes were by the court consolidated and heard together, and will hereafter be treated as consolidated causes, the proof in one being material in all said causes, and the issues one and the same in each and all of said causes, and all orders and decrees hereafter made, one entry will be made to apply to all of said causes, and in all other respects the said causes will be deemed and treated as one consolidated cause.

"And said causes being heard as set forth above, when by stipulation or concession of counsel, defendants waived all defenses to the suits except upon the two questions of fact, viz: first, that the fire was incendiary and was wilfully set by complainants or their agency to destroy fraudulently their own property for the purpose of collecting the insurance, and second, that the quantity and value of the property was much less than that shown by the inventory produced by complainants, and that said inventory was fraudulently made for the purpose of padding the claim, and fraudulently and wrongfully collecting off of the defendant companies; and complainants waived and abandoned their claims for the statutory twenty-five per cent sued for, it being agreed that the law of Kentucky did not, provide for such penalty, and that the laws of Kentucky applied to contract, being Kentucky contract, and upon the hearing the court found the facts against the defendant companies, and in favor of complainants, that is to say, the facts are that complainants are not in any way fraudulently or criminally responsible for the burning of their property, and the value of the buildings and stock consumed in the fire approximated $34,000 (thirty-four thousand dollars) after deducting the agreed value of the salvage property, and the total insurance of $29,000 (twenty-nine thousand dollars), the complainant's loss being more than the insurance carried, whereupon the consideration of the foregoing premises, and upon the entire record, including the court's findings of facts as herein above incorporated, it is further ordered, adjudged and decreed that complainants have and recover of the several defendants the face of the several policies sued upon, with legally accrued interest

from May 15, 1925, to this date as follows: They will recover of United States Fire Insurance Company in cause numbered in the caption 449, the sum of two thousand one hundred and fifty dollars ($2,150). They will recover of the American Insurance Company of New Jersey the sum of one thousand and seventy-five dollars ($1,075) in cause No. 455. They will recover of the Rhode Island Fire Insurance Company of Providence, in cause No. 456, the sum of one thousand and seventy-five dollars ($1,075.)

"They will recover of the Scottish Union and National Insurance Company, in cause No. 459, the sum of two thousand, one hundred and fifty dollars ($2,150).

"They will recover of the Pennsylvania Fire Insurance Company, in cause 461, the sum of two thousand, one hundred and fifty dollars ($2,150).

"They will recover of the Pennsylvania Fire Insurance Company in cause No. 462, the sum of five hundred and thirty-seven dollars and fifty cents ($537.50).

"They will recover of the Pennsylvania Fire Insurance Company, in cause No. 463, the sum of five hundred and thirty-seven dollars and fifty cents ($537.50).

"They will recover of the National Union Fire Insurance Company, in cause No. 464, the sum of one thousand and seventy-five dollars ($1,075).

"It is further decreed that the cost of this consolidated cause, including all costs accrued in each separate cause, be paid by said eight defendants, one-eighth of the total bill of cost to be paid by each defendant in addition to the judgment above awarded. For each and all of the foregoing judgments executions are awarded.

"To the foregoing action and decree of the court, and especially to his finding the facts and to each and every adverse order and ruling as to the admission of evidence, defendants each and all excepted at the time, and now except, and pray an appeal to the next term of the Court of Civil Appeals sitting in Nashville, which appeal is granted upon the execution of bond as required by law, and thirty days from the filing of this decree with the Master are allowed in which to perfect the appeal by executing the bond.

"The Clerk and Master at Hartsville will immediately enter this decree on the Minutes and will file the Chancellor's memorandum of his decision, as a part of the record."

The "Chancellor's memorandum of his decision," mentioned in the foregoing decree, is not in the record sent up to this court.

The foregoing decree was rendered on August 18, 1926. The defendants did not perfect the appeal thereby granted, but, on August 26, 1926, filed a petition for a hearing, and on that date the Chancellor ordered that until said petition be heard and disposed of all further proceedings in the cause be stayed, including proceedings upon the decree theretofore pronounced. On September 10, 1926, the complainants filed an answer to the petition for a rehearing, and, on September 14, 1926, an order was made and entered as follows:

"These causes came on to be heard before Hon. W. R. Officer, Chancellor, etc., at Chambers at Lafayette, Tenn., on this September 14, 1926.

"Pursuant to the order heretofore entered in these causes upon the petition of defendants for a rehearing and the exhibits thereto, the answer of the complainants and exhibits thereto, upon consideration of all which, the court is of the opinion that said petition should be denied and it is therefore ordered, adjudged and decreed by the court that the same be denied.

"It is further ordered, adjudged and decreed by the court that the order entered into these causes at Chambers, at Livingston, Tenn., August 26, 1926, staying further proceedings pending the hearing on said petition be and the same is vacated and set aside, and the decree heretofore entered rendering judgment in favor of complainants and against the defendants be and the same is restored and it further appearing to the court that the last mentioned decree, through inadvertence prayed an appeal on behalf of the defendants to the Court of Appeals, it is ordered by the court that so much of said decree as prayed an appeal is set aside.

"To the action of the court in rendering judgment against them, and each of them in overruling their petition for a rehearing the defendants, each of them except, and pray an appeal to the next term of the Court of Appeals at Nashville, for the Middle District of Tennessee, which is granted by the court upon the defendants giving bond as required by law. Upon application of defendants and sufficient reason appearing therefor, the defendants, and each of them are given thirty days from the date of this decree within which to file their appeal, this decree the C. & M. at Hartsville, will immediately enter on the Minutes."

On October 12, 1926, each of the defendants filed an appeal bond. In each instance the bond recites that it is for an appeal from a decree rendered against it on the 14th day of September 1926—the date of the decree denying the petition for a rehearing. Whether upon this record the defendants have perfected their appeals is a question not altogether free from doubt. (McClister v. Milligan, 1

Tenn. App. Rep., 258; England v. Young, 155 Tenn., 506, 296 S. W., 14). But complainants have not challenged the jurisdiction of this court, and we have resolved the doubt in favor of defendants and entertained the appeals.

The defendants have assigned errors in this court, as follows:

"1. The Chancellor committed error in holding and finding that the complainants were not in any way fraudulently or criminally responsible for the burning of the property insured.

"2. There was error in the holding and finding of the Chancellor that the value of the buildings and stock consumed in the fire approximated thirty-four thousand dollars ($34,000) after deducting the agreed value of the salvaged property.

"3. The Chancellor committed error in holding and finding that the complainants' loss amounted to more than the twenty-eight thousand dollars ($28,000) insurance carried by them.

"4. The Chancellor committed error in decreeing a recovery against the defendants for the full amount of their policies, with interest, or for any amount."

"5. The Chancellor committed error in failing to find and hold that the value of the property upon which the twenty-eight thousand dollars ($28,000) insurance was carried did not exceed, after excluding the salvage, the sum of seven thousand dollars ($7,000).

"6. The Chancellor committed error in failing to find, hold and decree that the complainants, in their sworn proofs of loss, knowingly and wilfully perpetrated a fraud upon defendants in the over-valuation of the property insured and for the wilful and deliberate purpose of trying to collect or induce the defendants to pay said over-insurance of twenty-eight thousand dollars ($28,000), and in not dismissing complainants' bills."

It will be remembered that at the trial below the "defendants waived all defenses to the suits except upon the two questions of fact, viz: first, that the fire was incendiary and was wilfully set by complainants or their agency to destroy fraudulently their own property for the purpose of collecting the insurance, and, second, that the quantity and value of the property was much less than that shown by the inventory produced by complainants, and that said inventory was fraudulently made for the purpose of padding the claim and fraudulently and wrongfully collecting off of the defendants companies;" and that the Chancellor found these "questions of fact" against the defendants and in favor of complainants.

It seems obvious that the determinative questions on this appeal are presented by the first and sixth assignments of error, supra.

Through an elaborate brief filed by their learned and able counsel, the defendants vigorously assail the finding of the Chancellor that

complainants did not wilfully burn their property for the purpose of collecting the insurance.

The burden was on the defendants to prove that the complainants, or one of them, wilfully burned the insured property or caused it to be burned. Cooley's Briefs on Insurance, 2nd Ed., Vol. 5, p. 5006.

The appeal of the defendants vacated the decree of the Chancellor, and the case is triable de novo here, that is to say, no presumptions obtain in favor of the Chancellor's findings and conclusions, and the appellants are entitled to a re-examination by this court of the whole matter of law and fact appearing in the record. Shan. Code, Sec. 4887; Willis and Turner v. Moore and Davis, 151 Tenn., 562, 271 S. W., 736.

Although the defense of wilful burning involves a charge of felony, such defense need not be established beyond a reasonable doubt. The rule is not universal, but it is now settled by the great weight of authority that a preponderance of evidence is all that is necessary to establish this defense in a civil case. Joyce on Insurance, 2nd Ed., Vol. 5, Sec. 3782, p. 6198; Cooley's Briefs on Insurance, 2nd Ed., Vol. 6, p. 5013.

By analogy, it would seem that Tennessee is in line with the current of authority on this question. See Fleming v. Wallace, 116 Tenn., 20, 91 S. W., 47, wherein it was held that a plea of justification in a slander suit, where defendant charged plaintiff with a felony, may be sustained by a preponderance of the evidence.

But the evidence of guilt must be sufficient to overcome the presumption of innocence which obtains in favor of persons charged with crime. Cooley's Briefs on Insurance, 2nd Ed., Vol. 6, p. 5012. And the complainants are entitled to the benefit of proof of their own good character. Spears v. Insurance Co., 1 Baxt., 370; Henry v. Brown, 2 Heisk., 213; Joyce on Insurance, Sec. 3782, supra.

In Hills v. Goodyear, 4 Lea, 233, 240, the court (through Judge Cooper) said:

"It does not follow, however, that a party who is charged in a civil case with a crime or moral dereliction, may not have the benefit of good character and the presumptions of law in favor of innocence. Evidence of good character is admitted in criminal prosecutions because the intent with which the act, charged as a crime, was done, is of the essence of the issue, and the prevailing character of the defendant's mind, as evidenced by his previous habits of life, is a material element in discovering that intent. Upon the same principle, the like evidence ought to be admitted in all other cases, whatever be the form of proceeding, when the intent, to be found as a fact, is involved in the issue: 1 Greenl. Ev., Sec. 54, note; Ruan v. Perry, 3 Caines, 120; Fowler v. Aetna Ins. Co., 6 Cow., 675; Townsend v. Graves, 3 Paige, 455; Our decisions are in accord: Scott v.

Fletcher, 1 Tenn., 488; Henry v. Brown, 2 Heisk., 213; Spears v. International Ins. Co., 1 Bax., 370.

"The admission of evidence of character is not assigned as error in the case now before us.

"The law in all cases, civil or criminal, presumes innocence. Obviously, therefore, to create a preponderance of evidence in a civil case, where crime is imputed to one party, the other party assumes the burden of not only overcoming the evidence of his opponent, by a preponderance, but of overcoming also the presumption of law in favor of the innocence of his adversary. In other words, there is no preponderance on the side of the charge of guilt, unless the evidence is sufficient to overbalance the opposing presumption as well as the opposing evidence, including evidence of character: Knowles v. Scribner, 57 Me., 497; Ellis v. Buzzell, 60 Me., 209, Bradish v. Bliss, 35 Vt., 326."

Although the ruling of the court in Hills v. Goodyear, supra, with respect to the charge of the trial court, was overruled in McBee v. Bowman, 89 Tenn., 132, 14 S. W., 481, the court (speaking through Judge Caldwell), in the latter case expressly reaffirmed that part of the opinion in Hills v. Goodyear quoted above, in the following language:

"It is unquestioned that in a case like that one, or like this, the party charged with a great moral wrong may, in addition to his other proof, introduce evidence of his good character and invoke the legal presumption of innocence. 1 Bax., 370; 2 Heisk., 213; 1 Tenn., 488.

"All these must go into the scales on his side of the case, and the aggregate of evidence thus produced must be overcome by proof of the opposite party before the verdict can properly go against him; but, at the same time, a mere preponderance of the evidence is sufficient to justify that result. Only enough evidence to turn the scales need be adduced by the other party. The amount of evidence requisite to his defeat must be greater than in the ordinary civil case, because he has placed more weight in his side of the scales; but the required degree of preponderance is the same. The degree of conviction in the minds of the jury may be the same where there is a charge of crime in a civil case as where there is no such charge, though more evidence is necessary to overcome opposing testimony and produce that conviction in the one case than in the other. A preponderance in either case is sufficient."

We may say, in this connection, that the complainants in the instant case read at the trial the depositions of a considerable number of witnesses possessing, according to their testimony, the necessary legal qualifications of character witnesses, who testified, without reservation, that the complainants are men of good character for

honesty and for truth and veracity. The defendants offered no countervailing evidence on this subject.

The first question for decision here is whether the complainants, or either of them, wilfully burned the property in question, or procured it to be burned. The evidence in the record comprises about six hundred typewritten pages of depositions, and in addition a number of original exhibits. It would extend this opinion to an unreasonable length and consume the time of the court for no useful purpose to review herein the testimony of the witnesses (approximately sixty in number) whose depositions were read at the trial below.

After a careful consideration of the record, we agree with the Chancellor that the proof does not show that complainants were in any way fraudulently responsible for the burning of their property. In fact, there is no satisfactory evidence that the fire was of incendiary origin. The origin of the fire is not explained on the record, but all the circumstances in evidence are consistent with an accidental fire. The mere fact that the complainants have failed to account for the origin of the fire is not an incriminating circumstance, for it is a matter of common knowledge that this situation frequently exists without giving rise to the suspicion of wilful burning or fraud.

The learned counsel for defendants seem to regard the alleged effort of complainants to fraudulently "pad" their proof of loss (if sustained by the proof) as convincing evidence that complainants wilfully burned their property or procured it to be burned. This, we think, is a non sequitur. The owners of property accidentally destroyed by fire may, and sometimes do, make, or attempt to make, fraudulent proofs of excessive losses. Reports of adjudged cases found in the books afford illustrations of the truth of this latter statement. Hence, although proof that a "fake inventory" had been "framed up" after the fire for the purpose of claiming a loss greatly in excess of the actual loss sustained might serve to strengthen evidence tending to show a wilful burning of property by the insured, it is not substantive evidence of such wilful destruction of the property.

As before indicated, we find that the preponderance of the evidence does not sustain the averment in the respective answers of the defendants that the fire in question was caused or brought about by the intentional, wilful, deliberate and fraudulent act or acts of the complainants, or one of them, for the purpose of destroying said property and causing the loss sued on.

This brings us to the consideration of the second of the two defenses upon which the defendants are relying in this case, viz: that the quantity and value of the property was much less than that shown by the inventory produced by complainants, and that said

inventory was fraudulently made for the purpose of padding the claim and fraudulently and wrongfully collecting off of the defendant companies.

If this contention of the defendants is sustained by the preponderance of the evidence, the complainants are not entitled to recover anything, and their bills should be dismissed, because of the provision in each of the policies in suit that "this entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance, or the subject thereof; . . . or in case of any fraud or false swearing by the insured touching any matter relative to this insurance, or the subject thereof; whether before or after a loss."

The burned buildings were a total loss. The only valuation of the buildings in the record purporting to be based upon an accurate calculation of replacement cost, with deduction for depreciation, is found in the testimony of complainants' witnesses R. L. Turbeville, an architect, and Neal Moore, a carpenter and building contractor. These witnesses were well acquainted with the buildings before the fire, and they gave itemized and detailed estimates based upon measurements and calculations of the character above mentioned.

The witness Turbeville estimated the cost of replacement of the four buildings burned at $9,509.77, and deducted forty per cent of this sum, as depreciation on account of the age of the buildings (twenty years), leaving $5,705.88 as the loss on the buildings.

The witness Neal Moore estimated the cost of replacement at $8,489.24, and deducted thirty-three and one-third per cent for depreciation, leaving $5,659.50 as the value of the buildings at the time they were burned.

The defendants do not attempt to overcome the testimony of Turbeville and Moore by any witness whose testimony purports to be based on an accurate estimate of the actual value of the buildings, but they rely on some witnesses who testify that the buildings were in a "dilapidated" condition, and the testimony of the witness A. C. Jackson, who gave it as his opinion that the buildings were worth "around $2,000" at the time of the fire.

A fire insurance policy is a contract of indemnity, and we think the testimony of Turbeville and Moore should be accepted as the most reliable record evidence of the actual loss which complainants suffered by the destruction of the buildings in question.

The complainants' proof of loss on the stock of lumber and other builders' supplies was based on an inventory purporting to have been made November 1, 1924; but defendants insist that this inventory is false and was made up after the fire for the purpose of defrauding the defendants. Complainants deny that the inventory or proofs of loss are in any respect tainted with fraud, and they

assert that the inventory was made by complainant Allen Livingston and an employee of the complainants, Delbert Meador, during the first six days of November, 1924, as of November 1, 1924 (four and one-half months before the fire), and in the regular course of business. Complainants show by their testimony that it had been their custom to take an annual inventory on (or as of) the first day of January of each year, but that in the Fall of 1924 they consolidated two "yards" or "plants" theretofore conducted by them in Scottsville, viz: one known as the "Huntsman yard" and the other known as the "Read yard," by moving all the stock from the Huntsman yard to the Read yard, and as this removal was completed about November 1st, they thought that an opportune time to ascertain the amount of stock on hand, and the inventory was accordingly then made.

An inventory which Allen Livingston and Delbert Meador testified was the original inventory made by them at the time and in the manner aforesaid, and which, they stated, was in the office safe of complainants at the time of the fire, was produced and filed in evidence.

Complainants also produced books containing the record made in the regular course of business of their daily sales, both for cash and on credit, and the accuracy of these books was verified by the testimony of Allen Livingston and Delbert Meador, who were salesmen at complainants' place of business and made all the entries in the books.

Complainants also showed by competent and undisputed evidence the amount of goods purchased and placed in stock after November 1, 1924, and before the fire on March 15, 1925. It is stipulated by the parties in the record that the sound value of the salvaged stock was $3,493.26. The proof is that complainants customarily obtained a gross profit of twenty-five per cent on the sales made November 1, 1924, and March 15, 1925. The inventory of November 1, 1924, was made up on the basis of actual cost price, plus freight to Scottsville.

Upon the evidence which we have thus briefly summarized, complainants computed the net loss on their stock of lumber and other builders supplies, as follows:

"Inventory as of Nov. 1, 1924 ........................$39,374.89
"Goods purchased between Nov. 1, 1924 & March 15, 1925 .   3,984.41

|  |  |
|---|---|
|  | $43,359.30 |

"Less cash & credit sales from Nov. 1, 1924
    to March 15, 1925.....................$7,306.31
"Less 25% gross profit ................. 1,826.58     5,479.73

"Goods on hand at time of fire ........................$37,879.57

"Less sound value of salvage ...................... 3,493.26

$34,386.31"

If the inventory filed by complainants is a "fake," as insisted by defendants, there is no evidence in the record upon which a finding of the amount and value of the stock could be based with any sort of reasonable accuracy. If the complainants' inventory was honestly made at the time claimed by complainants, it affords the most satisfactory evidence in the record upon which to base a computation of the complainants' loss on their "stock." If the inventory was not honestly made as claimed by complainants, but was fraudulently manufactured after the fire for the purpose of defrauding defendants, the correct value of the stock is immaterial, for complainants must be denied a recovery of any sum and their bills must be dismissed. We must, therefore, decide whether the defendants have proved, by a preponderance of the evidence, that the inventory was "framed up" for a fraudulent purpose as claimed by defendants.

The evidence chiefly relied upon by defendants to impeach the good faith of the inventory is the testimony of nine or ten witnesses who had been in complainants' place of business shortly before the fire and who undertook to estimate the amount of lumber they saw there, and some of whom also testified to their estimate of the amount of other goods, such as paint and screen wire. These witnesses were "casual observers" of the stock, and did not look it over with a view of forming an estimate of its amount and value (with the possible exception of the witness A. C. Jackson), and their estimates vary widely, which would be expected of mere opinion estimates made under the circumstances and conditions disclosed by this record.

For the reasons heretofore stated, we shall not in this written opinion undertake to review and analyze the evidence bearing upon the question now under discussion. Suffice it to say that, in our opinion, the evidence tending to impeach the inventory is not sufficient to outweigh the evidence tending to support it. The inventory is supported by the positive testimony of Allen Livingston and Delbert Meador and by other evidence tending to show that the quantities of lumber and other stock on hand approximated the amounts shown by the inventory. If the inventory is bogus, Allen Livingston and Delbert Meador are not only guilty of conspiring to defraud the defendants, but they are also guilty of perjury. In order to justify a finding that the inventory is not genuine, the evidence tending to support that theory must outweigh the evidence to the contrary, including the presumption in favor of the innocence of Allen Livingston and Delbert Meador and the good character of both established by a host of witnesses. We do not think the

defendants have successfully discharged the burden thus resting upon them, and we concur in the Chancellor's finding on that issue. It results that all of the defendants' assignments of error are overruled.

In the brief for complainants it is insisted that, in addition to recovery of the amount of the policies sued on, with interest, complainants are entitled to recover a "supersedeas penalty" of ten per cent of the recovery provided by a Kentucky statute. The record contains a stipulation signed by counsel for the parties, respectively, which stipulation is as follows:

> "In this cause it is stipulated by counsel of the respective parties that there is no penalty under the laws of Kentucky for failure to pay on a claim against an Insurance Company because of bad faith, but that the laws of Kentucky provide for a supersedeas penalty of ten per cent of the recovery against Insurance Companies where they are unsuccessful in the trial court and the verdict is affirmed on appeal irrespective of good faith."

The Kentucky statute mentioned in the stipulation is not in evidence. It is said in the brief for defendants that

> "The ten per cent supersedeas penalty is one imposed by the law of Kentucky in all cases where an appeal is taken from a money judgment and a supersedeas bond is given to stay execution on the judgment. This supersedeas penalty is not put on insurance companies only (as the Tennessee twenty-five per cent penalty for 'bad faith' litigation is imposed), but applies to all judgments. It is not a penalty for litigation or for improperly defending a case; it is a penalty imposed for staying execution on a judgment after same has been rendered in the trial court. It is not obligatory and rests entirely with the discretion of the appellant as to whether execution shall be so stayed, and is not an essential element of the appeal."

If the Kentucky statute which complainants are seeking to invoke is, as its name implies, a penalty statute, is will not be enforced by the courts of Tennessee. This rule is well settled. Whitlow v. N. C. & St. Louis Railway Co., 114 Tenn., 344, 84 S. W., 618.

However, if the Kentucky statute in question is not strictly a "penalty statute" within the rule last above mentioned, it is not such a statute as enters into the contract and becomes a part of it in such way that it will be enforced by the courts of Tennessee. It pertains to the remedy, and is a matter of procedure. In such matters, the judgment to be rendered against an unsuccessful appellant when the judgment is affirmed on appeal is controlled by the law of the forum. Kline v. Royal Insurance Co., 192 Fed. Rep., 378, 389; Story on Conflict of Laws, 3rd Ed., Secs. 570, 572.

Shan. Code, Sec. 4900, provides that "on affirmance of decrees in

equity cases for money, interest shall be recovered at the rate of six per cent. per annum."

The Tennessee statute above quoted controls in this case, and not the Kentucky statute providing a "supersedeas penalty."

The decree of the chancery court is affirmed and a decree will accordingly be entered here granting recoveries in favor of complainants and against the defendants and the sureties on their appeal bonds, respectively, as set forth in the decree below, together with interest thereon at six per cent per annum, and for costs, including the costs of the appeal.

Crownover and DeWitt, JJ., concur.