TENNESSEE-JELLICO COAL CO., INC., v. YOUNG.—79 S. W. (2d) 815.

Eastern Section.   December 22, 1934.

Petition for Certiorari denied by Supreme Court, February 23, 1935.

C. A. Templeton, of Jellico, for plaintiff in error.

Harry B. Brown, of Jellico, and John Jennings, Jr., of Knoxville, for defendant in error.

PORTRUM, J.  This case is here on appeal by the defendant company from a judgment of $4,000 in favor of the plaintiff, Nancy Young, administratrix, for the death of her sixteen year old son, Benton Young, who was employed by one of the defendant's employees to carry coal and water at the said employee's home in defendant's mining camp, and who was killed by coming in contact with an electric wire strung across the yard of said home.

The declaration alleges that the deceased was an invitee of the defendant, and that the defendant was guilty of gross negligence in the installation and maintenance of certain electric wires across the yard of said home as a result of which one of the wires fell from its fastening and struck the deceased while he was in the act of crossing said yard with a bucket of coal, thereby injuring him and killing him.  The declaration contains seven or more specifications of negligence not necessary now to state.

There is but one assignment of error which questions the judge's right in declining to sustain the motion for peremptory instructions, and the assignment sets out the ground upon which the motion was based, and reads as follows:

"The court erred in not sustaining the defendant's motion for a directed verdict in favor of the defendant at the conclusion of the evidence on the grounds that: The proof fails to make out a case of liability against the defendant under the declaration and under the law.  The proof does not show how the plaintiff's intestate came into contact with the wire in question, but leaves it to conjecture and speculation."

The company maintained and operated an electric light system and furnished electricity and light to its tenants living in its houses upon the mining property.  The wire in question went from a pole into the porch of the house where the deceased was working, and was fastened to the side of the house about ten feet from the ground, and from this point it was strung to another house owned by the

company in which another employee lived, by being attached to a tree about thirty or forty feet away, and from there to the house of the other tenant. The wires were attached to this tree about ten feet above the ground, by a bracket or its equivalent, and the tree was eight or ten inches in diameter. This was a circuit composed of two wires placed four to six inches apart, or one above the other. The wires were old and the installation had worn away, leaving them partially naked; the lower wire had fallen as many as three times prior to the accident, and it appears that it had broken about eight inches from the tree and had been replaced by making a hook in each end of the wire and hooking it together. As stated, it was fastened ten feet above the ground at the porch and on the tree, but it sagged in the middle, and its distance from the ground at this place was stated to be about seven feet, or it was demonstrated more accurately by the testimony of a witness who stated that he was six feet and one inch tall, and that he measured the distance by standing at the place and extending his arm upward when the wire struck him just below the hand, or at the wrist.

The accident occurred about 7:15 o'clock A. M., on December 10, 1932. The night before and on this morning it had been raining, and there had been wind blowing the limbs of the trees. At this time the deceased had gone to the home, procured his coal bucket, and was on his way to bring in his coal, and his path led under this wire. The lights were on in the dwelling, and it may have been dark in the yard. At this time the lights went out in the dining room in the house supplied by the wire which led from the tree. The occupant of this house was at breakfast, and he arose from the table and looked out the window, but saw nothing; immediately he heard the screaming of a woman, and he went outside. He saw an agitated woman standing at the place where the boy lay, but because of a rise he could not see the boy. He went to the place of the accident and found the boy lying upon the ground with his hands near his head, palms upward, and an electric wire running through each of the partially closed hands; he attempted to extricate the boy by procuring another wire which was insulated and with this wire to pull the live wire away, but he was unsuccessful. Another then ran up, and, seeing the boy in contact with the live wire, he pulled off his sweater, rolling it around his hands, grabbing hold of the live wire and pulling it away from the prostrate boy. The boy was then taken into the house, and then away to a more convenient place where first aid was applied, and an attempt made to revive him, but this proved unsuccessful. The boy's cap lay near him, and the empty coal bucket lay away at a distance of about eight feet. These are the pertinent facts established by direct testimony.

The company cites the following authority in support of its first insistence:

"Under a declaration averring specific acts of negligence as grounds for recovery, the plaintiff cannot recover upon proof of other acts of negligence." East Tennessee Coal Co. v. Daniel, 100 Tenn., 65, 74, 42 S. W., 1062; Moore v. Fletcher, 145 Tenn., 97, 236 S. W., 924; Memphis Street Railway v. Cavell, 135 Tenn., 462, 187 S. W., 179, Ann. Cas., 1918C, 42; Memphis Street Railway ·v. Berry, 118 Tenn., 581, 102 S. W., 85; Nashville C. & St. L. Ry. Co. v. Whitt, 5 Tenn. App., 463.

The declaration in this case alleges that the boy came in contract with a fallen wire, and the company insists this fact is not proven, since it is as reasonably probable that he took hold of the wire before it fell, and for this reason the jury is not permitted to conjecture or guess, since it is unwarranted from the evidence in finding one fact to the exclusion of the other. We think there is circumstantial evidence warranting the inference that the wire fell from the fact that the wire was insecurely fastened, and the wind was blowing swaying the tree and its limbs, and on three other occasions it had fallen. But these facts do not negative the idea that the boy may have caught hold of the wire and pulled it down, so if there are any facts warranting an inference that the boy may have caught hold of the wire and pulled it down then the plaintiff did not prove the boy came in contact with a fallen wire. The inference that the boy may have taken hold of the wire is attempted to be drawn from the fact that he was found with the wire in both of his partly closed hands; with nothing more this might be as reasonable an inference as the inference that the wire had fallen. But before the jury would be justified in drawing this inference, it must be shown that the boy was tall enough to take hold of the wire, and there is no proof in this record of the height of the deceased, other than that he was sixteen years of age, and we do not think the jury was warranted in drawing another inference to support the first that a sixteen year old boy could reach a .seven-foot wire. The sagging wire came to the wrist of an extended arm of a man six feet one inch tall, and there is no justification for concluding that all sixteen year old boys can reach this wire. Proven facts upon which another fact may be inferred is not conclusive upon a jury unless it is irrefutable; another inference drawn from the same facts may be the true one, instead of the inference alleged. When this is true it is the province of the jury to say which is the true inference. Wigmore on Evidence, sec. 117.

We have here two inferences or presumptions, first, the boy being sixteen years of age was tall enough to reach the wire, and, second, the wire was found in his partially closed hands, which indicates that he took hold of the wire while it was in its position on the poles. There is a rule of evidence that presumption must be based upon facts and not upon inferences or upon other presump-

tions. "No presumption can with safety be drawn from a presumption." Jones on Evidence, sec. 104.

We think the jury warranted from the facts in inferring that the boy came in contact with the fallen wire, and that there is no evidence to support a finding that he took hold of the wire before it fell.

But if there were evidence from which the jury may have concluded that he took hold of the wire before it fell, then his negligent act was not the proximate cause of his death. It is alleged as the grounds of negligence in the declaration that the wire was not properly constructed or maintained, and the proof shows it was fastened together by bending hooks in the end of the wire and hooking the wire together. Had this wire been securely fastened and properly insulated, then had the boy caught hold of the wire which was seven feet above the ground, the wire would not have given away, and the shock, if any, under these circumstances, would have caused his leg muscles to have relaxed and gravitation would have pulled him away from the wire and have prevented his death. And for this reason the following cases are not applicable: Du Pont Rayon Co. v. Roberson, 12 Tenn. App., 261; Buckeye Cotton Oil Co. v. Campagna, 146 Tenn., 389, 242 S. W., 646; Tennessee Electric Power Co. v. Van Dodson, 14 Tenn. App., 54.

It is next insisted that the boy may have been swinging his coal bucket and the coal bucket knocked the wire down. If the wire had been securely attached, the coal bucket could not have knocked the wire down and the shock from the contact with the bucket would not have injured the deceased. There is nothing to warrant this evidence except that the bucket was laying eight feet from the body, and he had taken the bucket to get coal. The same thing could have as reasonably happened had he come in contact with a fallen wire, and when we have facts warranting two presumptions, one of innocence and the other of negligence, then the jury is never permitted to infer negligence. And there is also a presumption of self-preservation which gives the greater weight to the presumption of innocence. Phillips-Buttorf Mfg. Co. v. McAlexander, 15 Tenn. App., 618.

"Plaintiff in an action for personal injuries is not bound to prove affirmatively that he was free from contributory negligence, but where his contributory fault does not appear upon his testimony, the burden of proof to establish it rests upon the defendant." Burke v. Street Railway Co., 102 Tenn., 409, 52 S. W., 170.

"There is a presumption arising out of the instinct of self-preservation that a decedent was in the exercise of ordinary care when fatally injured, prevailing until overcome by competent evidence, and which may prevail where there are no eye witnesses of or any

542

direct testimony as to his conduct." Tennessee Central Railway Co. v. Herb, 134 Tenn., 397, 183 S. W., 1011.

We think there is evidence to support the verdict, and the judgment of the lower court should be affirmed, with costs.