# JAMES B. BENSON v. H. E. FOWLER and NU-GAS COMPANY, INC.—306 S. W. (2d) 49.

Western Section. June 21, 1957

Petition for Certiorari Denied by Supreme Court, October 4, 1957.

148

Lloyd Tatum, Henderson, and Fonville & Diamond, Jackson, for plaintiff in error.

Hancock & Manhein and G. L. Morrison, Jackson, for H. E. Fowler.

Moss & Benton, Jackson, for Nu-Gas Co., Inc.

BEJACH, J. This cause involves an appeal by James B. Benson, who was plaintiff in the lower court, from a jury verdict and judgment thereon in favor of the defendants in the Circuit Court of Madison County, Tennessee. For convenience the parties will be styled, as in the lower court, plaintiff and defendants or by their respective names. Plaintiff's suit is for damages resulting from the loss of three fingers on his left hand and one finger on his right hand, which fingers had to be amputated following the freezing of same, caused by contact with propane gas, while he was filling a tank attached to a tractor owned by defendant, H. E. Fowler, from a storage tank on the premises of said Fowler, the tank on the tractor in question and the gas having been sold by the defendant Nu-Gas Company. Plaintiff's declaration is in two counts. The first count charges common law negligence on the part of defendants, alleging "that said defendants knew or should have known that propane gas is a highly dangerous liquified petroleum gas and especially dangerous and likely to cause

serious injury when it leaks on or comes in contact with a person; that it was the duty of defendants to exercise a high degree of care, to see and know that the plaintiff and all persons intended to handle and use said propane gas be properly instructed in its use and in particular in regard to the peculiar, uncommon, and highly dangerous qualities and properties of said propane gas.'' The second count charges violation by defendants of certain regulations promulgated by the Fire Marshal of the State of Tennessee, pursuant to authority vested in said State Fire Marshal by Chapter 191, Public Acts of 1947. The defendants filed pleas of not guilty and contributory negligence.

The proof established that the plaintiff, James B. Benson, worked as a sharecropper on the farm of defendant, H. E. Fowler, sometimes referred to as Hughey Fowler, located on the Beech Bluff road about five miles from Jackson, Tennessee; that the defendant, Nu-Gas Company, had installed propane gas tanks on the Fowler farm; that some two or three weeks before the 13th day of March, 1954, on which date plaintiff was injured, two tractors owned by Fowler and operated on his farm were equipped for use of propane gas as fuel for said tractors; that propane gas was stored in a large container tank in the rear of the Fowler residence, from which tank propane gas was also used for heating the Fowler residence. On March 13, 1954, while attempting to refuel a tractor tank from the storage tank, plaintiff was injured by the spewing of propane gas onto his hands for from two and a half to three minutes from an open valve on top of the tractor tank. It was plaintiff's contention, and he so testified, that he was performing this operation exactly as he had been instructed; that he knew the

tractor tank was full, or 90% full, which was as full as it was supposed to be, when gas was vented from this open valve; that when gas began to come out of this valve on this particular occasion, he attempted to cut it off but could not because the cut-off mechanisms would not work. It is the plaintiff's contention that the cut-off mechanism failed to work because same had frozen, and there is some testimony in the record tending to show that under certain conditions such freezing could occur. Plaintiff testified that he tried to cut off the valve at the end of the delivery hose, then tried to cut off the open valve, and that when neither of these valves would operate, he finally cut off the flow of gas at the main storage tank, although he had not been instructed so to do. At the time of plaintiff's injury, he was refueling the tank on the tractor for the second time without assistance.

Plaintiff testified that neither defendant, H. E. Fowler, the Nu-Gas Company, nor anyone else had warned him that propane gas is highly dangerous if it leaked onto his hands, that he was only warned not to strike a match or smoke around propane gas, that no warning signs were posted around the gas tank installation, that he had no reason to suspect that propane gas was dangerous if it leaked onto his person, and that although he was present when the propane gas installation was made by defendant, Nu-Gas Company, and it knew he was going to operate the tractor, he was not warned.

On the other hand, witnesses for defendant Nu-Gas Company testified that plaintiff was present when the installation was made and that full and complete instructions and warnings were given which plaintiff either heard or could have heard at that time. Defendant, H. E. Fowler, testified that not only was plaintiff present

when the installation was made, where and when he heard the instructions and warnings of representatives of the Nu-Gas Company, but that subsequently he had, himself, personally explained in detail all matters connected with the operation and had personally supervised and assisted plaintiff on several occasions prior to March 13, 1954, in refueling the tractors. Mrs. Melba Fowler, wife of defendant, H. E. Fowler, testified that on the morning of the accident, plaintiff excitedly ran into and out of the house three times, saying the first time, "Mrs. Fowler, I can't get that hose off of the tank." Whereupon she said, "Well, just let it go, I will cut the pilot off on the heater"; that the second time he asked for a pair of gloves, whereupon, she said, "Mr. Benson, I do not have any gloves, Hughey has the only pair in the field; just let that go, I don't think there is a bit of danger in the world"; that he said, "I am afraid it will blow up"; to which she replied, "I don't think there is a bit of danger, just get back and let it go"; that after the third time, she went out to the garage to get the car (to go after Mr. Fowler) and that just as she got to the garage Mr. Benson had the hose off the tank at the tractor and was holding it up. Mrs. Fowler testified that she then noticed that his hands were frozen and said, "Come on, Mr. Benson, we have got to get you to a doctor"; that she opened the car door and he got in. Whereupon, she asked him, "Do you want me to carry you on to the hospital, Mr. Benson, you will have to have something done to those hands, do you want me to carry you right on to the hospital, or would you rather go home?"; that at his request she took him first to his home which was about a quarter of a mile away; and that from there, Mr. Fowler took Mr. and Mrs. Benson to the hospital.

At the conclusion of plaintiff's proof and also at the conclusion of all the proof, both defendants made motions for peremptory instructions, which motions were overruled. After the jury had considered the case, they were excused until the next day, at which time, by request of the foreman, the jury was recharged. Thereafter, the jury returned a verdict in favor of both defendants. Plaintiff moved for a new trial which was taken under advisement by the court. Later, the trial judge announced that the motion for a new trial would be granted but before any order was entered on the minutes, he reconsidered the matter and overruled the plaintiff's motion for a new trial. Plaintiff excepted to the action of the court, prayed and perfected his appeal in the nature of a writ of error, and has filed sixteen assignments of error in this Court.

■■ By assignments of error I and II, plaintiff contends that there is no material evidence to support the verdict, and that the verdict is contrary to the law and the evidence. We find no merit in either of these assignments. As was said by Howard, J., speaking for the Court of Appeals (Eastern Section) in Dickson Stave & Heading Co. v. Archer, 40 Tenn. App. 327, 291 S. W. (2d) 603, 606:

"In ascertaining whether there is any material evidence to support the verdict, we are required to take the strongest legitimate view of all the evidence, * * * disregard all inferences to the contrary, and indulge all reasonable inferences to uphold the verdict."

See, also, Jarratt v. Clinton, 34 Tenn. App. 670, 241 S. W. (2d) 941, and D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S. W. (2d) 897, 901.

■ Also, as was said by Avery, P. J., (W. S.), speaking for the Court of Appeals (Western Section) in the case of Callahan v. Town of Middleton, 41 Tenn. App. 21, 292 S. W. (2d) 501, 504:

"This Court is not concerned with the preponderance of the evidence. If there was any material evidence to support the verdict of the jury it is the duty of this Court to sustain the verdict of the jury and judgment of the court thereon."

See, also, Accident & Casualty Ins. Co. v. Lasater, 32 Tenn. App. 161, 165, 222 S. W. (2d) 202, and De Rossett v. Malone, 34 Tenn. App. 451, 239 S. W. (2d) 366. Assignments of error numbers I and II are, accordingly, overruled.

■ Assignment of error number III complains of action of the trial judge in setting aside the order sustaining plaintiff's motion for a new trial, recalling the motion for further argument, and then overruling the motion for a new trial. It is asserted that by this action the trial judge committed prejudicial error and that this action on his part indicates that in his capacity as a thirteenth juror who was dissatisfied with the verdict.

We find no merit in this assignment. Even if the trial judge's order granting the motion for a new trial had been entered on the minutes of his court, which in this case had not been done, it still would have been within the breast of the court and subject to alteration or recall during the remainder of the term of court, or for

thirty days if the term of court lasted that long. As was said by Mr. Chief Justice Neil, speaking for the Supreme Court of Tennessee in Arkansas Fuel Oil Co. v. Tanner, 195 Tenn. 553, 558, 260 S. W. (2d) 286, 288:

"It is not disputed but that any order or judgment of the Circuit Court is subject to the control of the trial judge, and may be modified and set aside by him at any time prior to its becoming final. Any fact or circumstance which may have influenced the trial judge in pronouncing judgment, unless preserved in a proper bill of exceptions, cannot be considered on appeal or on petition for writ of error."

So far as plaintiff's contention that this action on the part of the trial judge indicates that he was dissatisfied with the verdict of the jury is concerned, there is nothing in the record which affirmatively shows dissatisfaction with the verdict on the part of the trial judge acting as a thirteenth juror. In McLaughlin v. Broyles, 36 Tenn. App. 391, 255 S. W. (2d) 1020, 1023, the cause was reversed because the record did affirmatively disclose that the trial judge had failed to weigh the evidence and exercise his function as a thirteenth juror; but the language of this decision expressly authorizes a trial judge to overrule a motion for a new trial without comment, in which case it is said that the presumption will be that he did weigh the evidence and exercise his function as a thirteenth juror. To the same effect, see Gordon's Transports, Inc. v. Bailey, 41 Tenn. App. 365, 294 S. W. (2d) 313, 320-321. Plaintiff's assignment of error Number III is accordingly overruled.

Plaintiff's assignment of error number IV complains of the action of the trial judge in giving to the jury a special instruction requested by the defendant, H. E. Fowler, as follows:

"At the request of defendant, Fowler, I instruct you if you should find in this case that immediately before the plaintiff suffered his injuries he was warned of the dangers which he would encounter if he did not remain at a distance from the propane equipment, and if you should further find that the plaintiff ignored such warning and returned to the equipment and was injured, and if you further find that such conduct was not that which a reasonable and prudent man, under similar circumstances, would exercise for his own safety, and was one of the proximate causes of plaintiff's injuries, then I charge you that plaintiff would be guilty of proximate contributory negligence, and your verdict should be for both defendants even though you should find the defendants guilty of actionable negligence."

It is contended on behalf of plaintiff that this charge was prejudicial because it singles out particular facts and gives them undue prominence or emphasizes particular evidence, thus leading the jury to believe that the court thinks such evidence of greater weight than other evidence not mentioned in the charge.

Plaintiff cites in support of this assignment or error, Stevens v. Moore, 24 Tenn. App. 61, 139 S. W. (2d) 710; Union Bus Terminal v. Mennen, 14 Tenn. App. 551; Gulf Compress Co. v. Insurance Co. of Pa., 129 Tenn. 586, 167 S. W. 859; Carman v. Huff, 32 Tenn. App. 687,

227 S. W. (2d) 780; Yellow Bus Line v. Brenner, 31 Tenn. App. 209, 213 S. W. (2d) 626; and Louisville & N. R. Co. v. Frakes, 11 Tenn. App. 593. In several of these cases, the action of the trial judge in refusing such instruction was affirmed on the ground that it was not proper for him to single out particular evidence and emphasize it. The latest pronouncement which we have found on this subject is in Carman v. Huff, 32 Tenn. App. 687, 701, 227 S. W. (2d) 780, 786, where McAmis, J. (now presiding judge of this Court) said:

"In addition, it is not considered good practice for the court to single out particular facts or emphasize particular evidence in the charge to the jury thus leading the jury to believe that the court thinks such evidence of great weight. Stevens v. Moore, 24 Tenn. App. 61, 76, 139 S. W. (2d) 710, and cases there cited. For these reasons, we think there was no reversible error in refusing to charge special requests tendered."

In Stevens v. Moore, 24 Tenn. App. 61, 139 S. W. (2d) 710, 719, which was a suit for damage to a rug which has been dry cleaned by the defendant and in which the jury had returned a verdict for the defendant, Faw, P. J., speaking for the Court of Appeals, said:

"Plaintiff's fifth assignment is that the Trial Court erred in charging the jury as follows:

" 'There is evidence to show that the rug when it was returned was better than when sent to defendant to be cleaned.'

"There was evidence by one witness, defendant's wife, as stated in the instruction challenged by plain-

tiff's fifth assignment of error, supra, and defendant's witness Muller stated that the rug was 'in as good shape as it was before.' But there was evidence (by plaintiff and Mrs. Kimbro) that when the rug was returned it was not 'better', or not 'as good' as when sent to defendant to be cleaned, but that it was a good rug, worth $50 when sent to defendant to be cleaned, and was worthless for use as a rug in a home when returned; and this evidence on behalf of plaintiff was not mentioned in the Court's charge to the jury.

"It is error for the Trial Judge to single out particular facts and give them undue prominence or emphasize particular evidence, thus leading the jury to believe that the Court thinks that such evidence of greater significance and weight than other evidence not mentioned in the charge. Gulf Compress Co. v. Commercial Union Assurance Co., 129 Tenn. 586, 595, 167 S. W. 859; Louisville & N. R. Co. v. Evins, 13 Tenn App. 57, 90; 14 R. C. L. pages 780-782, Sec. 48.

"The plaintiff's fifth assignment of error is sustained."

It will be noted, in the instant case, that the charge complained of was given in the form of a special request after the trial judge had concluded his general charge. Under the authorities cited by plaintiff and referred to above, while presumably it would not have been reversible error for the trial judge to have refused this special request, it does not necessarily follow that he was in error because he exercised his discretion to give same. The general charge had contained the instruction, "If

you should find by the greater weight of the evidence that the defendant failed to give such warning, advice and instruction, and that this was the proximate cause of the injuries sustained by the plaintiff and do further find by the greater weight of the evidence that plaintiff was not guilty of any act of contributory negligence, your verdict will be for the plaintiff and against the defendants." But this charge, unless clarified by the special instruction given later, might have left the jury under the impression that a warning given by the wife of defendant Fowler was not included therein. Particular evidence of negligence on the part of defendants, such as proof of violation of regulations promulgated by the State Fire Marshal, had been specifically referred to in the general charge of the judge, and we think the giving of the special request complained of did no more than equalize the situation on behalf of the defendants. Since the language of this special request, complained of by the plaintiff, correctly states the law, we think the trial judge should not be reversed because he exercised his discretion to grant same rather than to refuse it.

In any event, under the provisions of Section 27-117, Tennessee Code Ann., we cannot say that it affirmatively appears that the verdict of the jury in this case would have been otherwise, even if this special request had been refused. Assignment of error number IV is accordingly overruled.

■ Assignment of error number V complains of the giving by the trial judge of a special request of the defendant Nu-Gas Company, as follows:

"At the request of the defendant, Nu-Gas Company, I charge you that the Fire Marshal of Tennessee has also issued the following regulation:

"Gauging devices that require a bleeding of the product to the atmosphere, such as the rotary tube, fixed tube and slip tube, shall be so designed that the bleed valve's maximum opening is not larger than a number 54 drill size, unless provided with excess flow valve."

Plaintiff's objection to this charge is based on the contention that there was no evidence introduced in the trial of the case to warrant such an instruction. For this proposition he cites Louisville & N. R. Co. v. Ray, 101 Tenn. 1, 46 S. W. 554, and Kidd v. Kirby, 1 Tenn. App. 242.

The fallacy of plaintiff's position in this regard lies in the fact that the regulation quoted appears on page 16 of the pamphlet of the Fire Marshal dated August 5, 1947, under paragraph B. 15(c), being the page immediately following the one on which appears paragraph B. 12(c), so much relied upon by plaintiff to the effect that gas or liquid shall not be vented to the atmosphere when transferring from one container to another, which fire regulation was, on behalf of plaintiff, charged to the jury. These regulations were introduced in evidence by plaintiff himself. With reference to the contention that there is no specific testimony in the record as to the size of the bleed valve's maximum opening on defendant's equipment, it is sufficient to say that the equipment in question was itself in evidence and subject to inspection by the jury.

In any event, Section 27-117, Tenn. Code Ann., referred to above, would prohibit a reversal. Assignment of error number V is accordingly overruled.

■ Assignment of error number VI complains of the action of the trial judge in giving to the jury a special request of the defendant Nu-Gas Co., as follows:

"At the request of the defendant, Nu-Gas Company, I charge you that a retail dealer, who sells goods made by another ordinarily is not held to the same inspection as the manufacturer, but must exercise the care and competence of a reasonable dealer as to any defects which he has an opportunity to discover; the care required of such a seller at retail is only that of a reasonable man under the circumstances; such care does not extend beyond the reasonable examination which experience would indicate to the retail dealer is necessary, along with the investigation of any unusual condition that may be apparent."

In support of this assignment, plaintiff's counsel cites Rulane Gas Company v. Montgomery Ward & Co., 231 N. C. 270, 56 S. W. (2d) 689 and Franklin v. Skelly Oil Co., 10 Cir., 141 F. (2d) 568, 153 A. L. R. 156. In the case of Rulane Gas Company v. Montgomery Ward & Co., the retailer, Montgomery Ward, had made specific representation to the purchaser that a stove sold by it could be used for Rulane (propane) gas, when in fact it was not adapted to such use, even after the dealer had made certain adjustments to the equipment. Nevertheless, when fourteen months after the sale, a Rulane employee struck a match to locate a gas leak and the stove blew up, killing the purchaser, it was held that the

dealer was not liable to the purchaser because negligence on the part of the dealer was not the proximate cause of the injury. In the case of Franklin v. Skelly Oil Co., the Court charged the jury that one furnishing or installing equipment must use care in proportion to and commensurate with the particular hazard involved. That is what the trial judge charged the jury in the instant case. The proof was clear in the instant case that the Nu-Gas Company did not manufacture any of the articles sold by it to the defendant Fowler, and that its installation consisted merely of putting a bracket on the tractor to which was attached the tank for propane gas. Prosser on Torts at page 668 says:

"When the liability is based on negligence, the care required of the seller is only that of a reasonable man under the circumstances. The responsibility of a retail dealer who sells products made by another, for example, does not extent beyond the reasonable examination which experience should indicate as necessary, and investigation of any unusual condition apparent to him."

We think that the judge's charge in the instant case was consistent with the above quotation and that the evidence was ample to justify the jury's verdict in favor of the defendant, Nu-Gas Company. Assignment of error number VI is accordingly overruled.

 Assignment of error number VII complains of the following charge to the jury:

"At the request of the defendant, Nu-Gas Company, I charge you that if you find that the defendant, Nu-Gas Company, through its agents, servants

or employees, adequately and properly warned and instructed the defendant, Hughie Fowler, then it was the duty of said Fowler to instruct those tenants or employes of his who were expected to use the equipment and the propane gas which Fowler purchased from the defendant, Nu-Gas Company; and that the duty of the Nu-Gas Company in this respect was completed upon a finding by you from a preponderance of the evidence that such proper warnings were given to Fowler, and to those present at the time of the installation of this equipment.''

We find no merit in this assignment. Defendant Nu-Gas Company's witness, Barrentine, testified that plaintiff was present when the installation was made and that he at that time made full explanation and warning. Plaintiff admits that he was present at that time, but does not say that he heard the warnings. In any event, defendant Fowler testified that he instructed plaintiff in the presence of Hornsby, and Hornsby corroborates defendant Fowler's testimony.

Even if the instruction be considered as technically inaccurate, a reversal on that ground would be precluded by the provisions of Section 27-116, Tennessee Code Annotated, which is:

''No judgment, decision, or decree of the inferior court shall be reversed in the appellate courts, unless for errors which affect the merits of the judgment, decision, or decree complained of.''

Assignment of error number VII is accordingly overruled.

 Assignment of error number VIII complains of the following charge to the jury:

"At the request of the defendant, Nu-Gas Company, I charge you that before said Company can be held negligent for supplying equipment that was improper and unsuitable for the purpose intended, you must find that it had notice of the unsuitability, or that equipment was improper, or defective."

Plaintiff's counsel in their brief contend that this charge was error because it excludes the test of ordinary care, and in effect says that before you can hold the defendant, Nu-Gas Company, liable, plaintiff must prove defendant had notice that the equipment involved was improper or defective,—an impossible burden. Their brief cites Restatement of the Law of Torts, secs. 392, 393, 400, 401, and 403, King Hardware Co. v. Ennis, 39 Ga. App. 355, 147 S. E. 119, and Franklin v. Skelly Oil Co., 10 Cir., 141 F. 2d 568, 153 A. L. R. 156, as authority for the proposition that "One undertaking to install a propane gas system is held to the standard of care commensurate to the hazard involved." That is what the trial judge charged the jury in the instant case.

As was pointed out above, the defendant Nu-Gas Company did not manufacture any of the articles installed by it. It knew and warned the defendant Fowler, who in turn warned the plaintiff, that the gas itself was inherently dangerous if improperly handled. The equipment, however, was not inherently dangerous, and if it had been properly used, no damage would have resulted. In that situation, the Nu-Gas Co., in the absence of knowledge of defects in its equipment, none of which are proved in this case, had a right to rely on the manu-

facturer who made the tank and other parts sold and installed by it. Prosser on Torts, pages 668, 681, 684. Assignment of error number VIII is accordingly overruled.

Assignment of error number IX complains of the ruling of the trial judge excluding the testimony of a character witness offered on behalf of plaintiff.

The general rule on the subject of character witnesses is stated in 20 Am. Jur., Evidence, Sec. 319, pp. 299-300, as follows:

"In criminal cases, the accused is permitted to prove not only his good reputation, but also his good character in defense of the accusation of crime against him. In civil cases, however, the character or reputation of a party to an action is generally regarded as irrelevant, and evidence concerning it is not admissible. Evidence of the character of a party is not admissible to prove or disprove the act with which he is charged. In civil cases each transaction must be ascertained by its own circumstances, and not by the character or reputation of the parties. The only instances where proof of character or reputation is permitted is where the action involves or directly affects the character or reputation of a party, or, in other words where the nature of the proceeding is such as to put the character of a party directly in issue. Evidence of character and reputation is generally regarded as inadmissible, even though the cause of action is one for which a criminal prosecution might be brought. Generally in actions for recovery of penalties, evidence of general reputation or character is not admissible."

Decisions of Tennessee courts have modified the principles announced in the above quotation to a certain extent, among others, by admitting character evidence in a tort action for malicious prosecution, Scott v. Fletcher, 1 Tenn. 488, and by admitting character evidence in a civil action where a party is charged with a crime, Livingston v. U. S. Fire Ins. Co., 7 Tenn. App. 230. In Hill v. State, 159 Tenn. 297, 17 S. W. (2d) 913, it was held that the admission of character evidence to support the testimony of one of the prosecuting witnesses was within the sound discretion of the court, and in Smith v. Tune, 2 Tenn. Civ. App. 503, 511, it was held that the admission or exclusion of character evidence with reference to one of the parties to the suit was within the sound discretion of the trial judge. But no case has been pointed out to us, nor have we found any, wherein the lower court was reversed for excluding character evidence in a civil suit wherein the character or reputation of the party in whose behalf such testimony was offered, was not directly in issue. In Warfield v. Louisville & N. R. Co., 104 Tenn. 74, 79, 55 S. W. 304; La Follette Coal, Iron & Ry. Co. v. Minton, 117 Tenn. 415, 428, 101 S. W. 178, 11 L. R. A., N. S., 478; and Lackey v. Metropolitan Life Ins. Co., 26 Tenn. App. 564, 585, 174 S. W. (2d) 575, where the trial judge had exercised his discretion to admit such testimony, his action was approved on appeal.

In the instant case, the trial judge exercised his discretion to exclude the character evidence offered in behalf of plaintiff, and we cannot say that he abused his discretion. In any event, the testimony having been excluded, the record before us does not disclose what the witnesses' answer would have been. Conceivably,

at least, he might have answered that the plaintiff's reputation was bad. Assignment of error number IX is overruled.

■ Plaintiff's assignments of error numbers X and XII are treated together in the briefs of both defendants, and although they are treated separately in plaintiff's brief, we think they can be disposed of together. Assignment number X is that the trial court erred in charging the jury, as follows:

"Proximate contributory negligence however slight on the part of one seeking a recovery for damages will bar a recovery."

This, it is claimed, constituted error because the plaintiff charged gross negligence in the declaration in this case, and contends that proof of the violation of a penal statute constituted proof supporting this charge, and that contributory negligence is not a bar to a recovery founded on gross negligence but may be considered in such case only in mitigation of damages. Assignment of error number XII complains of the refusal of the trial judge to give in charge to the jury plaintiff's special request number I, which is as follows:

"Ladies and gentlemen, if you find that the defendants, or either of them, violated any provision of the State Fire Marshal's regulations, which have the force of statute, and that such violation was gross, willful, wanton negligence, and was the proximate cause of plaintiff's injury, you are instructed that contributory negligence, if any, is not a defense available to such defendant or defendants guilty of such gross, willful and wanton negligence, but may be considered only in mitigation of damages."

In support of his contentions with reference to these assignments, plaintiff cites and relies on Byrd v. Gipson, 34 Tenn. App. 254, 236 S. W. (2d) 988; Inter-City Trucking Co. v. Daniels, 181 Tenn. 126, 178 S. W. (2d) 756; Herstein v. Kemker, 19 Tenn. App. 681, 94 S. W. (2d) 76; Highland Coal & Lumber Co. v. Cravens, 8 Tenn. App. 419; Tennessee-Jellico Coal Co. v. Young, 18 Tenn. App. 537, 79 S. W. (2d) 815; Kingsul Theaters, Inc. v. Quillen, 29 Tenn. App. 248, 196 S. W. (2d) 316; Memphis St. Ry. Co. v. Haynes, 112 Tenn. 717, 81 S. W. 374; Tennessee Cent. R. Co. v. Herb, 134 Tenn. 397, 183 S. W. 1011; and Winn v. Consolidated Coach Corp., 6 Cir., 65 F. (2d) 256.

We deem it unnecessary to discuss these cases cited in plaintiff's brief. It is sufficient to say that they were correctly decided, and correctly applied the law in question applicable to the facts of these particular cases. Plaintiff's declaration in Count II, after alleging failure on the part of defendants to comply with the regulations promulgated by the State Fire Marshal, continues, "All of said failures and conduct being in gross violation of the basic rules and regulations set forth in the interest of safety in the aforesaid regulations promulgated as aforesaid by the Fire Marshal of the State of Tennessee." This allegation comes as close as any which we have been able to find in the record to making a charge of gross, willful, or wanton negligence on the part of defendants or either of them; and unless proof tending to show violation of the regulations promulgated by the State Fire Marshal ipso facto constitutes proof of gross, willful, or wanton negligence, there is no semblance of proof in the instant case that either of the defendants was guilty of gross, wanton, or willful negligence. No

172

cases are cited that hold such to be the law. We do not believe that it is the law, and hold to the contrary.

The only basis for the contention advanced by counsel for plaintiff that it was error for the trial judge to charge "Proximate contributory negligence, however slight on the part of one seeking a recovery for damages, will bar a recovery" is that such is not the law where gross, willful, or wanton negligence is alleged and proved.

It therefore follows that, inasmuch as they have failed to sustain assignment number XII, assignment of error number X must necessarily be overruled. Accordingly, both assignments or error numbers X and XII are overruled.

Assignment of error number XI complains of the giving by the trial judge of a special request as follows:

"At the request of the defendant, Nu-Gas Company, I charge you that even if you should find that certain regulations of the State Fire Marshal have been violated either by the Nu-Gas Company or by the defendant, Fowler, in any way, shape or form whatsoever, before the plaintiff, Benson, is entitled to recover damages at the hands of either of said defendants by reason of the violation of said regulations, plaintiff must prove to you by a preponderance of the evidence that the violations of the aforesaid regulations issued by the Fire Marshal of Tennessee were in fact the proximate cause of the injuries and damages suffered by the plaintiff and that such injuries and damages as he may have suffered were not proximately the result of his own negligence in the manner in which he was using the aforesaid equipment."

Counsel for plaintiff contend that this charge was erroneous because it placed on the plaintiff the burden of proving that he was not guilty of contributory negligence.

The fallacy of this contention lies in considering this part of the Court's charge given in response to a special request tendered by the defendant, Nu-Gas Company, separate and apart from the remainder of the Court's charge of which it constitutes only a part. The charge must be considered as a whole, and, at least three times, in the general charge of the Court, the jury had been expressly charged that the burden of proving contributory negligence was on the defendants. There is another reason why this assignment of error must be ruled adversely to plaintiff, and that is that in making an assignment of error based on the giving in charge to the jury this special request made by the defendant, Nu-Gas Company, the plantiff copies only part of the special request as given. There is another paragraph contained in the special request as given which is not referred to in plaintiff's assignment of error, as follows:

"That is, gentlemen of the jury, even if you find that the regulations were violated, you must nevertheless find that such violations proximately caused the injuries to the plaintiff, without proximate negligence on his part."

For these reasons, assignment of error number XI will be overruled.

Assignment of error number XIII complains that, because the trial judge, in recharging the jury as requested by it after the jury had been excused over night, did not repeat his charge verbatim and in full.

As is disclosed by the record, we think the judge did repeat substantially all of his charge as given the previous day.

The jury's request for a recharge by the Court appears in the record, as follows:

"Foreman: Your Honor, the members of the jury request that you recharge us with the law in this particular case, governing this particular case.

"The Court: If I understand you correctly, Mr. Deadrick, you want to be charged the law as charged to you yesterday, is that correct or was there some special phase of it you wanted?

"Foreman: That is correct, Sir, the law governing the tractor."

After recharging the jury, the Court inquired of the jury:

"Gentlemen, does that answer your question?

"Foreman: I believe it does."

Certainly we cannot say, as is required for a reversal, by Section 27-117, Tenn. Code Ann., that the failure of the trial judge to repeat his charge as given the previous day, verbatim et literatim, necessarily caused the jury to return a different verdict from that which it would otherwise have returned. Assignment of error number XIII is accordingly overruled.

Assignment of error number XIV is:

"The Court erred in charging the jury in the main charge and pursuant to the special request of the defendants and in recharging the jury pursuant to

the request of the foreman of the jury by repeating many times the same or substantially the same charge as to contributory negligence, if any, on the part of plaintiff being in bar of plaintiff's right of recovery, so as to emphasize to the prejudice of plaintiff the defense of contributory negligence said charges of the Court being attached hereto and made a part of plaintiff's motion for a new trial as fully as if copied herein.''

It is contended that this constituted error on the part of the trial judge because it unnecessarily and prejudically emphasized defendant's theory of plaintiff's contributory negligence. The only contention made by plaintiff's counsel that the Court's charge on the subject of contributory negligence was not technically correct, other than because of repetition of same, is contained in assignments of error numbers X and XII which have been disposed of above. A careful reading of the judge's charge, and recharge, as set out in the record before us, convinces us that in every part of the judge's charge where he referred to contributory negligence, it followed or was a part of what he was charging on the subject of defendants' liability, provided defendants' negligence was the proximate cause of plaintiff's injuries, and we think such charges with reference to contributory negligence constituted proper qualifications of what had been said with reference to plaintiff's right of recovery on account of negligence, if any, of the defendants. Assignment of error number XIV is accordingly overruled.

Assignment of error number XV complains of the ruling of the Court in admitting witness, Moody L. Barrentine, to testify, over the objection of plaintiff, as

an expert witness on the properties of propane gas. Mr. Barrentine testified that he had had about nine years of direct experience in the propane gas business, and about four or five years additional in connection with service work, that he was familiar to some degree with the chemical properties of propane gas and that he had had about twenty years experience with a cotton gin manufacturing company in the mechanical engineering department.

 ██ On the subject of qualifications of expert witnesses, Volume 20, American Jurisprudence, Evidence, Section 783, page 656, says:

"Generally speaking, to be competent to testify as an expert witness, one must have acquired such special knowledge of the subject matter about which he is to testify, either by study of the recognized authorities or by practical experience, that he can give the jury assistance and guidance in solving a problem which the jury are not able to solve because their knowledge is inadequate. In other words, one's qualification as an expert witness is dependent upon possession of special knowledge which he can impart to the jury and which will assist them in regard to a pertinent matter as to which the jury are presumed to be not as competent as the witness to draw the proper conclusions from the facts proved. An expert may be defined as a person who is so qualified, either by actual experience or by careful study, as to enable him to form a definite opinion of his own respecting any division of science, branch of art, or department of trade about which persons having no particular training or special study are

incapable of forming accurate opinions or of deducing correct conclusions. Accordingly, therefore, one qualified by professional, scientific, or technical training or by practical experience, in regard to a particular subject or field of endeavor, which gives him special knowledge not shared by persons in the ordinary walks of life, may testify as an expert on questions coming within the field of his training and experience, subject of course to the broad exclusionary rules of evidence relative to pertinency and relevancy, but if he is not so qualified, his testimony is incompetent.''

The Supreme Court of Tennessee in Powers v. McKenzie, 90 Tenn. 167, 181. 16 S. W. 559, 562, on this subject, said:

''Who are experts is a question that has somewhat vexed the courts. The true distinction between an expert and a non-expert witness, says Mr. Wharton, 'is that the latter gives the results of a process of reasoning familiar to every-day life, and the former gives the results of a process of reasoning which can be mastered only by special scientists.' It is obvious that, however an 'expert' may be defined, he should, in order to give his opinion as an expert, have some special as well as practical acquaintance with the immediate line of inquiry. Where the line between an expert and a non-expert should be drawn must, under the varying conditions of cases and their environments, necessarily be laid down by the *judex feri;* and this court will not reverse on account of the judgment of the lower court as to whether a witness offered in it is an expert, unless

we can clearly see that he was in error in respect to the qualifications of the witness, and that his error was injurious."

Tried by this test, we think Mr. Barrentine, even though he held no degree in chemistry as did an expert witness offered on behalf of plaintiff, was qualified to assist the jury in the instant case by his opinions. The relative weight to be given as between the testimony of Mr. Barrentine and plaintiff's expert witness was for the jury. We cannot say that the trial judge abused his discretion in admitting this testimony. Assignment of error number XV is accordingly overruled.

Assignment of error number XVI complains of the ruling of the trial court which permitted the defendants' witness, Floyd Willis, to read from a pamphlet purporting to be promulgated by the National Board of Fire Underwriters.

This evidence, complained of by plaintiff as appellant in this Court, was elicited on redirect examination after one of plaintiff's attorneys in cross-examining said witness, had asked whether or not the industry followed a 1947 pamphlet. The testimony complained of in this assignment of error was offered to show that the industry followed the 1953 regulations contained in said pamphlet objected to, rather than the 1947 pamphlet.

Even if it were error on the part of the Court to permit the witness to read from the regulations of the National Board of Fire Underwriters contained in this pamphlet, it was certainly harmless error because in his charge the judge expressly charged the jury that the regulations promulgated by the Fire Marshal of Tennessee

were the law of this case. The pamphlet in question is not incorporated in the record.

In any event, we cannot say, under the provisions of Section 27-117, Tenn. Code Ann., that even if no mention had ever been made of this pamphlet, the result of this trial would have been different. Assignment of error number XVI is overruled.

This disposes of all the plaintiff's assignments of error in this Court.

It is unfortunate that plaintiff has suffered the injuries, compensation for which is sought in this law suit; but he has had a fair trial and no valid reason has been assigned for setting aside the verdict of the jury. All of plaintiff's assignments of error are overruled and the judgment of the lower court is affirmed.

The costs of the appeal, as well as those of the lower court, will be adjudged against the plaintiff, James B. Benson.

Avery, P. J. (Western Section), and Carney, J., concur.