IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 12, 2005 Session

## MICHAEL E. INGLE, ET AL. v. AARON LILLY CONSTRUCTION, LLC

Appeal from the Circuit Court for Sullivan County
No. C11410 (M)     John S. McLellan, III, Judge

Filed August 26, 2005

No. E2004-02756-COA-R3-CV

Michael E. Ingle and his wife, Melissa R. Ingle ("the plaintiffs"), purchased a house from Aaron Lilly Construction, LLC ("the defendant"). The defendant had constructed the residence and the plaintiffs were the initial purchasers. The plaintiffs began to experience problems with their home and filed suit against the defendant on several theories, including a violation of the Tennessee Consumer Protection Act ("the TCPA"). The trial court, following a bench trial, found that the plaintiffs were entitled to recover, but not under the TCPA. The defendant appeals, arguing that the trial court erred in admitting the testimony of one of the plaintiffs' expert witnesses. They also claim that the evidence preponderates against the amount of damages found by the trial court. The plaintiffs, on the other hand, challenge the trial court's ruling with respect to their claim under the TCPA. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, J., joined.

J. Wesley Edens, Bristol, Tennessee, for the appellant, Aaron Lilly Construction, LLC.

Timothy W. Hudson, Bristol, Tennessee, for the appellees, Michael E. Ingle and wife, Melissa R. Ingle.

**OPINION**

I.

In 1999, the defendant finished the construction of a single-family residence located at 125 Boardwalk in Bristol. The house was constructed on a hillside. On May 15, 2000, the defendant conveyed the property to the plaintiffs. The cost of the house, including closing costs, was

$104,210.79. The defendant, by way of its managing partner, Aaron Lilly, informed the plaintiffs that it would fix any problems that surfaced in the first year.

Soon after the plaintiffs moved into the residence, they noticed a number of problems such as cracking in the walls, bowing in and water saturation of the basement foundation block wall, cracking in the basement retaining wall, inadequate drainage on the lot, water in the basement during heavy rains, and various cosmetic defects. The plaintiffs were dissatisfied with the defendant's response to their complaints. When they continued to experience problems, they filed suit on May 23, 2001.

By their amended complaint, the plaintiffs averred that the defendant "negligently, recklessly or intentionally designed and constructed the home" in a way that caused the following defects, among others: (1) insufficiently reinforced basement walls that crack, move and become wet; (2) a poorly constructed driveway and retaining wall that caused cracking, flooding and wall movement; and (3) poor grading which resulted in inadequate drainage. They further alleged that at the time of the sale, the defendant was aware of, and concealed, these defects. They sought damages for violation of the TCPA, intentional misrepresentation, negligent misrepresentation, negligent construction, and breach of the implied warranty of habitability. They asked for compensatory damages, or, in the alternative, rescission for fraud. In its defense, the defendant stated that the complaint failed to state a claim upon which relief can be granted, and that the plaintiffs failed to file their cause of action in a timely manner because, according to the defendant, their claim for defective material and workmanship expired one year from the date of purchase, *i.e.* May 15, 2000.

The bench trial commenced on March 29, 2004. Prior to trial, the parties stipulated that the residence was not built in accordance with the building code in effect at that time, *i.e.* the Southern Building Code. In particular, the parties stipulated that at the time the residence was constructed, the building code required that grout and rebar reinforcement be placed every 48 inches for a wall with more than eight feet of backfill. The residence had more than eight feet of backfill, yet the grout and rebar was not positioned every 48 inches.

Both plaintiffs testified regarding the difficulties they experienced stemming from the flooding that occurred in the basement and their losses. Subsequently, they proffered the testimony of two "experts," George Cross and Bruce Martin. Mr. Cross is a licensed engineer who does geotechnical, soil and foundation engineering; he testified as to the standard of care for building residences. The defendant agreed that Mr. Cross was qualified to testify as to the workmanship and quality of construction, and to make recommendations regarding repairs. Mr. Cross made two visits to the house, at which time he examined the foundation, the drainage around the home, and the retaining wall between the driveway and the fill in the front yard. He concluded that the home was not built in accordance with the standards expected of licensed home builders in the area. Mr. Cross recommended that several repairs be made, which repairs included changes to the foundation wall, the retaining wall, and the driveway.

The plaintiffs then called Bruce Martin to testify regarding the standard of care and the estimated cost of the repairs recommended by Mr. Cross. Mr. Martin is a licensed building contractor who operates a home construction business. The projects undertaken by Mr. Martin involve both new home construction and the rehabilitation of older homes; the majority of the work, however, was funded by the government, in which case he relied primarily on specifications established by engineers. The defendant challenged Mr. Martin's qualifications to testify on the ground that he was not familiar with the conduct of other general contractors in the area. Because of this challenge, counsel conducted a *voir dire* of the witness. Following *voir dire*, the trial court ruled that Mr. Martin was competent to testify, but that the court would consider the defendant's arguments with respect to his competency in weighing his testimony.

At the close of the plaintiffs' proof, the defendant moved to dismiss because of the plaintiffs' failure to establish the elements of any of their causes of action, including the failure to offer adequate evidence of damages. The court instructed the parties to file briefs on the defendant's motion, which they did. Court reconvened on June 8, 2004, at which time the court reserved ruling on the motion until the close of all the evidence.

During the second phase of the trial[1], the defendant proffered the testimony of two expert witnesses, Wayne Rader and Alan Rommes, both of whom opined as to the necessary repairs. They provided some base estimates for the cost of those repairs. For example, Mr. Rader estimated that the cost of reinforcing the foundation wall with concrete and regrading it would amount to approximately $3,124. Mr. Rommes, a licensed professional engineer, opined that the total cost to address the problems should not exceed $12,000.

The trial court, by memorandum opinion filed July 12, 2004, found that the plaintiffs had carried their burden of proof, by a preponderance of the evidence, that they were damaged as a result of the house not being constructed in a workmanlike manner. With respect to the plaintiffs' specific causes of action, the court held that the defendant had negligently constructed the house. The court ruled that the plaintiffs had sustained their claim for negligent misrepresentation. However, the court held that the plaintiffs failed to satisfy their burden on their claims of intentional wrongful conduct, misrepresentation by concealment and failure to disclose, intentional misrepresentation, and breach of the implied warranty of habitability. The court further held that the plaintiffs failed to prove that the defendant had violated the TCPA. Specifically, the court held that the evidence failed to show that the defendant was *aware* that there were drainage problems or that the wall was built in violation of the code. The court awarded the plaintiffs a judgment in the amount of $20,873.46.

The defendant subsequently inquired "as to the method and amounts used" by the trial court in computing the judgment. In response, the court filed a second memorandum opinion on July 27, 2004, indicating that the amount awarded was based upon the estimates furnished by Mr. Martin. The defendant filed a motion to alter or amend the judgment and asked that certain items be deducted

---

[1]At this point in time, the plaintiffs further amended their complaint to raise a claim of mutual mistake.

from the award. By final judgment entered October 13, 2004, the court awarded the plaintiffs $19,419.86, plus $400 in discretionary costs. From this judgment, the defendant appeals.

## II.

The defendant's issues on appeal are directed at the testimony of Bruce Martin. In particular, the defendant argues that the trial court erred when it permitted Mr. Martin to give opinion testimony as to the standard of care for general contractors and to opine as to the cost of implementing the repairs recommended by George Cross. In addition, the defendant argues that, if we find that the trial court abused its discretion in permitting Mr. Martin to testify as to the cost of repairs, there is no evidence to support the trial court's award. The plaintiffs counter the defendant's argument, and further contend that the trial court erred in finding that they failed to sustain their claim under the TCPA.

## III.

## A.

"Questions involving the qualifications, admissibility, relevancy, and competency of expert testimony are matters left within the broad discretion of the trial court." *State v. Stevens*, 78 S.W.3d 817, 832 (Tenn. 2002). Accordingly, we will not overturn a trial court's ruling absent a finding that the trial court abused its discretion in ruling on the admissibility of the expert's testimony. *State v. Ballard*, 855 S.W.2d 557, 562 (Tenn. 1993). A court abuses its discretion when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shuck*, 953 S.W.2d 662, 669 (Tenn. 1997).

Under Tenn. R. Evid. 702, an appropriate witness may express his or her opinion based on "scientific, technical, or other specialized knowledge." However, before a court may permit such testimony, the witness's proponent must show (1) that the witness is "qualified as an expert by knowledge, skill, experience, training, or education," and (2) that his or her opinion will "substantially assist the trier of fact to understand the evidence or to determine a fact in issue." Tenn. R. Evid. 702. An expert may rely upon matters not in evidence to arrive at his or her opinion if those facts are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Tenn. R. Evid. 703. However, if the underlying facts upon which the expert bases his or her opinion "indicate lack of trustworthiness," the trial court must exclude the expert testimony. *Id.*

When an expert's qualifications are challenged on appeal, we apply the following principles articulated by the Supreme Court:

> To give expert testimony, one must be particularly skilled, learned or experienced in a science, art, trade, business, profession or vocation. The expert must possess a thorough knowledge upon which he

> testifies that is not within the general knowledge and experience of the average person. The trial judge has wide discretion in the matter of the qualifications of expert witnesses.
>
> "It is obvious that, however an 'expert' may be defined, he should, in order to give his opinion as an expert, have some special as well as practical acquaintance with the immediate line of inquiry. Where that line between an expert and a non-expert should be drawn must, under the varying conditions of cases and their environments, necessarily be laid down by *judex feri*; and this court will not reverse on account of the judgment of the lower court as to whether a witness offered in it is an expert, unless we can clearly see that he was in error in respect to the qualifications of the witness, and that his error was injurious." ***Benson v. Fowler***, [306 S.W.2d 49, 63 (Tenn. Ct. App. 1957).]

***Otis v. Cambridge Mut. Fire Ins. Co.***, 850 S.W.2d 439, 443 (Tenn. 1992) (internal citations omitted).

We have applied these principles to a case involving a contractor. *See* ***GSB Contractors, Inc. v. Hess***, No. W2003-03068-COA-R3-CV, 2005 WL 877764 (Tenn. Ct. App. W.S., filed April 15, 2005). In ***GSB Contractors***, the homeowners presented the testimony of two experts: a home inspector who addressed the standard of care in residential construction, and a licensed general contractor who addressed both the standard of care and the cost of repairing the residence. ***Id***., at *7. The defendant there challenged the competency of the experts, arguing that there were several discrepancies between the experts' claims as to the breadth of their experience, and what the evidence actually showed. ***Id.***, at *9. In holding that the trial court did not abuse its discretion in admitting this testimony, we noted that the proffered discrepancies only went to the credibility of the opinions offered by the witnesses. ***Id.*** We affirmed the trial court's judgment; in doing so, we showed deference to the trial court's credibility determinations. ***Id***. (Citing ***Bowman v. Bowman***, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991)).

B.

In the instant case, the defendant argues that Bruce Martin was not qualified to testify regarding either the standard of care for building residences or the cost of implementing the recommended repairs. In particular, he argues that Mr. Martin was unable to testify as to the standards by which general contractors operated, and he was unable to furnish the details of the calculations leading to the various costs assigned to the several repairs.

Mr. Martin is a licensed building contractor who has been licensed in Tennessee since 1995, and licensed in Virginia since 1974. At the time of trial, he had been involved in the contracting business full-time for approximately 22 years; he testified that over the course of this time, he had built over 300 homes. Mr. Martin's work involved both new home construction and home

rehabilitation. At one time, only about 50% of his workload consisted of new home construction; however, at the time of trial, new home construction comprised approximately 85% of his work. Most of Mr. Martin's projects – approximately 80% – were funded by the government. In those cases, an engineering firm would be hired to evaluate the homes for whatever problems existed and record those observations in a report. Mr. Martin would then bid on the problems found by the firm. If his bid was the one accepted, he would undertake the work as specified by the engineer. Therefore, in constructing new homes, he relied upon engineers and building inspectors; he did not, however, regularly communicate with other contractors. Mr. Martin further admitted that he was not well versed in the building code because he often relied on the information provided to him by engineers, but he intimated that he equated the standard of care for contractors with compliance with the code. Only about 8 to 12 percent of his work consisted of the construction of private homes that were not government funded.

With respect to Mr. Martin's testimony on the estimated cost of the repairs, he relied upon a book entitled *Architects, Contractors, and Engineering Guide to Construction Costs*, which he obtained from a group called Design and Construction Resources. He testified that the book set forth costs relative to certain tasks, *e.g.,* excavation. His approach in the instant case was to take measurements of the plaintiffs' home and then employ the figures in the guide to arrive at his estimates. He calculated estimates for all of the repairs that were recommended and testified to by George Cross, the plaintiffs' other, and acknowledged, standard of care expert. On cross-examination, however, he was unable to provide the details of the calculations leading to the figures advocated by him.

At the conclusion of counsel's *voir dire*, the court stated that it would "allow him to testify and [the court will] just evaluate the . . . testimony upon his answer in the deposition and his other responses as to his percentage of private home construction and that sort of thing." However, following Mr. Martin's testimony, the trial court expressed some reservations, noting that

> I do have concerns with Mr. Martin's estimates for several reasons. He couldn't demonstrate how he reached his calculations, made no actual measurements, appears to eyeballed [sic] a lot of things. There's a real issue as to whether he's familiar with the standard. Has very little, . . . percentage-wise experience in private home construction. Seems to depend heavily on engineering recommendations.

Based upon our review of the evidence and the guiding principles articulated above, we find the trial court did not abuse its discretion when it found that Mr. Martin was "qualified as an expert by knowledge, skill, experience, training, or education." Tenn. R. Evid. 702. Our courts have read this rule broadly and accorded the trial court wide discretion in qualifying experts, noting that an expert "should . . . have some special as well as practical acquaintance with the immediate line of inquiry;" we have been cautioned not to reverse the trial court's judgment unless we "can clearly see that [the trial court] was in error in respect to the qualifications of the witness, and that [the trial court's] error was injurious." **Benson**, 306 S.W.2d at 63. As evidenced by the trial court's

statements, the court was aware of the deficiencies in Mr. Martin's qualifications relative to both the standard of care and the proffered estimates. In the trial court's judgment, these deficiencies did not disqualify Mr. Martin from testifying; rather they went to the weight the trial court would give to his testimony. *See GSB Contractors*, 2005 WL 877764, at * 9, *10. It is clear that the trial court employed this approach, as evidenced in its statement to that effect at the conclusion of *voir dire*, and we accord the credibility determination made below great deference on appeal. *See Bowman*, 836 S.W.2d at 566.

In this case, it is clear that Mr. Martin has extensive experience pertaining to the rehabilitation and construction of residences and some experience in building residential structures from the ground up. He is licensed by two states with respect to "building." Tenn. R. Evid. 702 recognizes that an individual may acquire the requisite knowledge to qualify as an expert by "experience." In dealing with the rehabilitation of, or the complete building of, a residential structure in over 300 instances, one would certainly acquire "experience" in the general field of what goes into the building of a residence. Since approximately 85% of his workload presently involves government-sponsored construction of houses, it is reasonable to assume that his work, generally speaking, has been satisfactory to the federal government. When all of this is considered, we cannot say that the trial court's decision to accept his testimony and allow the challenges made by the defendant to go to the weight given to his testimony constitutes an abuse of discretion. Even if we were to hold that Mr. Martin did not qualify as a standard of care expert, there would still be evidence on this subject by Mr. Cross, whose qualifications were not challenged by the defendant.

The defendant also challenges the trial court's adoption of the estimates provided by Mr. Martin because the rules of evidence instruct a court to disallow an expert's opinion "if the underlying facts or data indicate lack of trustworthiness." Tenn. R. Evid. 703. Therefore, so the argument goes, Mr. Martin's estimates should have been excluded because of his failure to produce any of the underlying data used to arrive at the estimates furnished to the court.

To satisfy the prescriptions of Tenn. R. Evid. 703, the opinion must be based upon data that is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." In the instant case, Mr. Martin relied upon a book entitled *Architects, Contractors, and Engineering Guide to Construction Costs*, which he testified was a book he often relied upon in calculating costs. On cross-examination, the witness was unable to furnish the details of calculations leading to the figures to which he testified. Failure to furnish the underlying data, however, is not the same as employing data that is not "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Tenn. R. Evid. 703. Here, Mr. Martin testified that he took measurements of the plaintiffs' home and subsequently used the guidelines in the book to arrive at his calculations. The defendant did not argue that this underlying data was not of the type reasonably relied upon to arrive at estimates; rather, he states in his brief that "[i]f the underlying facts and data to support the opinion or inference were not disclosed and were not articulable [sic] by the expert, that expert's opinion was not trustworthy and therefore was not admissible." While the application of Tenn. R. Evid. 703 can result in an opinion being excluded if that opinion is deemed to be based upon untrustworthy data, the failure of a

witness to furnish underlying computations is not necessarily fatal to the admissibility of the witness's opinion. An expert can offer his or her opinion without supplying the underlying data; in that case, the expert can be cross-examined with respect to the underlying data in an attempt to undermine the expert's credibility. *See* Tenn. R. Evid. 705. *See also* **Steele v. Fort Sanders Anesthesia Group, P.C.**, 897 S.W.2d 270, 278 (Tenn. Ct. App. 1994) ("Rule 705 of the Tennessee Rules of Evidence refers to cross-examination of an expert."). The trial court acted entirely within its discretion in allowing Mr. Martin to testify as to the costs of repairs while reserving to itself the prerogative of using his failure to supply the underlying computations as a factor in assessing the credibility of the evidence. We find no abuse of discretion. Furthermore, the evidence does not preponderate against the trial court's determination regarding damages; Mr. Martin's testimony, which the trial court obviously accredited on this subject, stands in opposition to a finding that the evidence preponderates against the trial court's award.

## IV.

In their brief, the plaintiffs challenge the trial court's judgment that they did not sustain their claims under the TCPA. The TCPA enumerates a number of "unfair or deceptive acts or practices [which] affect[] the conduct of any trade or commerce," including "[e]ngaging in any other act or practice which is deceptive to the consumer or to any other person." Tenn. Code Ann. § 47-18-104(b)(27) (Supp. 2004). The TCPA further provides that

> [a]ny person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice declared to be unlawful by this part, may bring an action individually to recover actual damages.

Tenn. Code Ann. § 47-18-109(a)(1) (2001). Generally, a plaintiff is only entitled to actual damages and reasonable attorney's fees where a violation is found. Tenn. Code Ann. § 47-18-109(a)(1) and (e)(1). However, if the court finds that the defendant's use of unfair or deceptive acts was "willful or knowing," the plaintiff is entitled to treble damages. Tenn. Code Ann. § 47-18-109(a)(3).

The unfair or deceptive act need not be intentional in order to qualify as a violation of the TCPA; negligent conduct is also contemplated by the language of the TCPA. *See* **Smith v. Scott Lewis Chevrolet, Inc.**, 843 S.W.2d 9, 13 (Tenn. Ct. App. 1992); **Sherrard v. Dickson**, No. 03A01-9701-CV-00007, 1997 WL 585746, at \*6 (Tenn. Ct. App. E.S., filed September 23, 1997). In **Smith**, we held that where a defendant salesperson did not know that a vehicle had been in an accident, despite conducting several inspections, that lack of knowledge or reasonable suspicion did not preclude a finding of liability under the TCPA where, as in that case, the salesman represented to the plaintiff that the vehicle had not been in an accident. **Smith**, 843 S.W.2d at 10, 13.

We now turn to the judgment of the trial court, which we will not disturb unless the evidence preponderates against it. Tenn. R. App. P. 13(d). The trial court held the following with respect to the plaintiffs' TCPA claims:

> The Court finds that while the [TCPA] applies to the sell [sic] of real property and that an unfair or deceptive act need not be willful or knowingly made to recover actual damages, Plaintiffs have failed to carry their burden of proof that Defendant used an unfair or deceptive act or practice which resulted in damage to Plaintiffs in violation of [Tenn. Code Ann.] § 47-18-104. The evidence is insufficient to show that, *prior* to the purchase of the property by Plaintiffs, Defendant was aware of the drainage problems nor, for the above stated reasons[2], was Defendant aware that the right foundation wall was constructed in violation of the Southern Building Code. Plaintiff testified that Defendant did not deceive Plaintiffs at the time of the sale of the property. Plaintiffs contend that their claim predicated on unfair and deceptive acts is based on their assertion that Defendant stated there was nothing wrong with the right foundation wall after hairline cracks and deflection began to appear when, in fact, the wall was constructed in violation of the Southern Building Code. Defendant's testimony is unrebutted that the Bristol, Tennessee building inspector did not require that rebar and concrete be installed on a periodic basis until 18 months after the construction of Plaintiffs' residence as a matter of enforcing the Code.
>
> For purposes of Plaintiffs' claims for treble damages under the [TCPA], Plaintiffs have not carried the burden of proof that Defendant willfully or knowingly violated this law with regard to the sell [sic] or construction of Plaintiffs' home.

(Emphasis added). The plaintiffs argue that the defendant violated the TCPA by "building and selling a home to them that was in violation of the building code, was otherwise not built according to workmanlike standards, and that the defects were not disclosed." In particular, the plaintiffs argue

---

[2]Elsewhere in the opinion, the trial court stated that

> [d]efendant's actions do not constitute intentional wrongful conduct as it appears that the applicability of reinforcing the foundation wall with concrete and steel was not uniformly required upon inspection by the Building Inspector for the City of Bristol, Tennessee, until some months after the construction of the Plaintiffs' house. Neither does it appear that Defendant took any action nor had any prior knowledge of potential drainage problems with the Plaintiffs' lot nor of the separation of the sewer pipe until after Plaintiffs purchased the home and began advising the Defendant of the various problems and defects as each began to appear.

that the defendant committed the following deceptive or unfair acts, among others: (1) that he knew that the Southern Building Code required a soil test that could lead to a requirement that a foundation wall be reinforced, but he did not do so because the inspector did not require it; (2) that the defendant knew that the building inspector would not enforce the code requirements; (3) that he did not tell the plaintiffs the wall was not built to code; and (4) that he told them it was a "good house" and they would not have to worry about water damage.[3] The plaintiffs therefore argue that the trial court erred in not finding that the defendant's misrepresentation *prior* to the purchase of the home entitled them to damages under the TCPA. The defendant counters that the trial court correctly found that the defendant had no knowledge that the foundation wall was not built to code prior to selling the home to the plaintiffs.

At trial, both parties proffered their versions of the conversation that transpired *prior* to the purchase of the home. Mr. Ingle testified Mr. Lilly told him and his wife that the home was "in good working order," and that in response to Mr. Ingle's questions about how the house handled water, the defendant allegedly responded that it was "why [he] put the big drain in at the bottom so it wouldn't flood the house and you wouldn't have to worry about any water damages." The defendant, on the other hand, testified that there were no conversations regarding the house being built to code, about the quality of workmanship, or about potential for water damage. He further testified that the city inspector, who was charged with interpreting the code, inspected the house at every stage of construction and furnished a certificate of occupancy. Although the code required that walls be rebarred every 48 inches, it was not required by the local building inspectors; in fact, it was not until 18 months after the sale that the inspectors started requiring it. He further testified that the building inspector interprets the code, and the Southern Building Code states that it is up to the inspector to interpret the code.

We cannot say that the evidence preponderates against the trial court's finding that the defendant did not negligently represent to the plaintiffs that the house was built according to code. It is true that it is not necessary to find that the defendant had knowledge of an alleged deficiency in order to find an "unfair or deceptive act" that violates the TCPA. *See Smith*, 843 S.W.2d at 13. However, the trial court found that the defendant did not make any representations as to the condition of the house that would support a finding under the TCPA. Although Mr. Ingle testified that the defendant made some reference to water drainage, it appears that the trial court did not accredit this testimony vis-a-vis what Mr. Lilly testified to with respect to the pre-sale conversations. We will not disturb the trial court's assessment of the credibility of witnesses, as those

---

[3]Among those deceptive acts alleged by the plaintiffs is the claim that the defendant put up 4 x 4 posts on the bowing foundation wall when he knew it would not fix the problem. The trial court, however, relied on this to find that the plaintiffs sustained their claim for negligent misrepresentation, but only as it pertains to the defendant's conduct *after* the sale of the home. In particular, the trial court held that "the Defendant, after observing the deflection on the Plaintiffs' right foundation wall, failed to investigate as to whether, as constructed, the Southern Building Code was applicable and merely installed two 4 x 4 posts as a cosmetic remedy." (Underlining in original). The plaintiffs do not argue that conduct occurring *after* the sale can fall under the rubric of the TCPA. Accordingly, we do not reach this issue.

determinations are accorded great weight on appeal. *Bowman*, 836 S.W.2d at 566. We affirm the judgment of the trial court with respect to the TCPA.

V.

The judgment of the trial court is hereby affirmed. Accordingly, we remand this matter to the court below for the enforcement of its judgment and for the collection of costs, all pursuant to applicable law. Costs on appeal are taxed to the appellant, Aaron Lilly Construction, LLC.

_____
CHARLES D. SUSANO, JR., JUDGE